[No. 7664.]

## Reynolds v. Norman, Administratrix.

Assumpsit—*Implied Promise.* Where the owner of lands upon which is an abandoned mine places the mine and its machinery in possession of another, under express contract that the latter shall unwater it, at his own expense, and the person so placed in possession assumes charge and direction of the work, the land owner is not responsible to those employed therein, even though he occasionally visits the mine, and makes suggestion as to the work.   (341, 342)

Otherwise, if, during the progress of the work, he knows, or has reason to believe, that those performing the labor or furnishing the material are relying upon him for their recompense, and makes no effort to undeceive them.   (342)

*Error to Boulder District Court.*—Hon. NEIL E. GRAHAM, Judge.

Mr. L. M. GODDARD, Mr. GEORGE P. STEELE and Messrs. REED, WEST & GOSS, for plaintiff in error.

Mr. M. M. RINN, for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

Fitzgerald recovered a judgment against Reynolds and the latter brings the case here for review on error. James Duce was named in the complaint as a co-defendant of Reynolds, but, failing to plead, judgment, by default, was entered against him and the case proceeded against Reynolds alone. The judgment is based upon the value of work alleged to have been performed for, and materials furnished to, the defendants, at their "special instance and request." Of the amount in dispute, $412.00, exclusive of interest, was alleged to be due the plaintiff for work and labor done and materials furnished by him to the defendants, and the balance, being $172.50, exclusive of interest, was claimed by virtue of assignments to the plaintiff of claims for labor alleged to have been performed for the defendants by C. L. Norris and S. C. Harris. The answer of defendant Reynolds was a general denial of the allegations of the complaint.

The case was submitted to the jury upon the theory that a verdict against Reynolds might be found upon either an express or implied contract. Although the evidence was conflicting, it was, perhaps, sufficient to establish a liability against defendant Reynolds upon an express contract for the amount of the assigned accounts, and for the further sum of $115.00, the contract price for a tipple erected by plaintiff on the premises. Whether there was any evidence that would warrant a finding against defendant upon the theory of an implied

contract for any of the items, is very doubtful. Every article furnished and all labor performed under such assumption, and the acts of the defendant in the premises, were consistent with the theory that the obligations were those of Duce alone, and the circumstances were in no sense misleading to those furnishing the materials and performing the labor.

Reynolds was the owner of a certain ranch in Boulder County upon which was situate an abandoned coal mine full of water. The mine had been at one time productive, but not in operation since Reynolds acquired ownership of the land. There was, however, on the premises, certain machinery which had been used in the operation of the mine, consisting principally of a boiler, engine, tipple, and hoisting apparatus, and the claims in suit grew out of the materials furnished in the repair of this machinery and work, and labor performed, and materials used, in the unwatering of the mine. The evidence shows, without contradiction, that the work of unwatering the mine was undertaken by Duce, on his own account, and for his own benefit, with a view of leasing the mine, under an express contract whereby Reynolds delivered possession thereof to him, and by the terms of which it was definitely agreed that Reynolds should pay no part of the expenses, and that Duce took possession of the mine, made the purchases, and employed the labor, except possibly that comprising the assigned accounts, and the aforesaid cost of the tipple. Moreover, he had full control and direction of the work, and, though Reynolds was occasionally at the mine, he in no sense assumed charge or direction of the work, or did anything in relation thereto, other than to make suggestions concerning the same. Besides, Duce commenced the work, employed the plaintiff, and made a considerable amount of purchases in question, before Reynolds and the plaintiff had any communication or acquaintance with each other. Moreover, a strong presumption arises that plaintiff had full knowledge of the non-liability of the defendant in the premises, except for those things which he

specifically authorized and agreed to pay. Plaintiff testified that, during the progress of unwatering the mine, the boiler completely broke down, and that Duce told him that in a conversation with Mr. Reynolds the latter had authorized him to find out what it would cost to put the boiler in shape, and subsequently the contract was made direct with Reynolds. Clearly, if Duce and Reynolds were partners in the work it was unnecessary that the former be authorized by the latter to take action in the premises. Furthermore, as to this work, it was conceded that plaintiff was paid therefor, though he claimed that such payment was upon account of the entire claim. This contention, however, is wholly inconsistent with plaintiff's action in the premises. In his account in suit this transaction is not mentioned, nor is there any credit given, though the plaintiff claimed that the payment made by Reynolds was $25.00 in excess of the contract price for the repairs to the boiler, while defendant claimed that such payment was the exact contract price for such repairs. The rule applicable here is tersely stated in *Bailey v. Rutjes,* 86, N. C. 517, 520, as follows:

> "It is unquestionably true, that if in the absence of all express understanding, one stands by in silence (and much more if he actively encourages), and sees work done, or material furnished for work, upon premises belonging to him, and of which he must necessarily get the benefit, and afterwards he does accept and enjoy it, a promise to pay the value thereof may be inferred, and ordinarily will be; and the inference under the circumstances will be purely one of fact, namely, whether the party's conduct has been such that a reasonable man might understand from it, that he meant to recognize the benefit as one conferred on himself, and to pay for it. In such a case, there can be no difficulty in making such an inference against the party, since the premises being his, the benefit of the labor done, or the material furnished, must necessarily result to him, and withal, he had the opportunity and the power to countermand it, if he would.

"But in the case at bar, the defendants, if their testimony is to be believed, had leased the premises to Rutjes for five years, and he had undertaken to have the improvements made, which called for the use of the lumber furnished by the plaintiff. They were therefore absolutely without the power, either to give or to withhold their sanction to its delivery and use, and ought not to be required to pay for it, unless they knew, or had reason to believe, that the plaintiff was looking to them for pay for his lumber, and allowed him to deliver it under that expectation and without objection on their part.—*Day v. Cayton*, 119 Mass. 513, 20 Am. Rep. 347; *Wells v. Bannister*, 4 Mass. 514. And it was in its failure to call the attention of the jury to this view of the case, that the error of the charge, as we conceive, consists. The instruction given should have been that if the defendants, knowing that the plaintiff expected them to pay for the lumber, acted in such wise as to create a reasonable belief on his part, that they would do so, and thereby induced him to deliver it, then the jury might infer a promise on their part, to pay for it.

"In the present form of action the question is, whether there was a subsisting contract between the parties in regard to the lumber, or not, and the doctrine of equitable estoppel has no application to the case.

"If not originally liable by reason of a contract of some sort, the defendants cannot be made so because of their having resumed possession of the premises with its improvements, upon the surrender of their tenant.

"It is true they thus derive some advantage from the materials furnished by the plaintiff, but that cannot be avoided, as it is impossible for them to reject, or restore to the plaintiff that benefit without a surrender of their own property; and this the law does not require of them to make. Pollock on Contracts, 29. Nor under such circumstances would a promise to pay, made after the lumber had been furnished and used, be binding on them since it

would be purely gratuitous and as such would make no contract.''

However, should we assume the evidence sufficient to warrant submitting the matter to the jury upon the theory of an implied contract, it was error to give, over the objection and exception of defendant, Instruction Nos. 4 and 5 without also giving, in substance, defendant's requested Instruction No. 3. The former instructions are abstract propositions of law, that one who knowingly accepts labor and materials, or the benefit thereof, from another is liable for the reasonable value of the same, except it appears the materials were furnished or the work done as a gift or gratuity. On the other hand, the instruction refused was supplementary to such abstract propositions of law, making them applicable to the facts of this case. Defendant Reynolds ought not to be required to pay for materials furnished, or labor performed, in the unwatering of the mine, unless he knew, or had reason to believe, that the persons so furnishing the materials or performing the labor were relying upon him for pay. The court's failure to call the attention of the jury to this view of the case makes it incumbent upon us to reverse the judgment.

*Judgment reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE BAILEY concur.

*Per curiam.*

Within the period allowed for an application for a rehearing, the parties filed a stipulation herein that final judgment be rendered by this court. In accordance therewith the order of reversal is set aside, and judgment ordered entered in favor of the defendant in error against the plaintiff in error for the sum of $287.50, together with interest thereon at the statutory rate of 8% per annum from July 5, 1909, and that the respective parties hereto pay their own costs in the premises.